UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| RICHARD D. BUIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | No. 1:13-cv-00878-RLY-MJD |
| CAROLYN W. COLVIN Acting | ) | |
| Commissioner of the Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Plaintiff Richard Buis ("Buis") requests judicial review of the final decision of the

Commissioner of the Social Security Administration ("Commissioner") denying his application

for Social Security Disability Insurance Benefits ("DIB") under Title II and for Supplemental

Security Income ("SSI") under Title XVI of the Social Security Act ("the Act"). *See* 42 U.S.C.

§§ 416(i), 423(d), 1382c(a)(3). For the reasons set forth below, the Magistrate Judge

recommends that the matter be **AFFIRMED**.

## I.  Procedural History

Buis filed an application for DIB and SSI on June 30, 2006, alleging an onset of disability

as of October 14, 2003, with a date last insured of September 30, 2008. Buis's application was

denied initially on September 18, 2006 and denied on reconsideration on December 6, 2006.

Buis timely requested a hearing, which was held before Administrative Law Judge L. Zane Gill

on January 21, 2009. The Appeals Council granted Scott's initial request for review, remanding

the matter because Judge Gill's residual functional capacity assessment did not specify Buis's sit/stand limitations.

On remand, a second initial hearing was held on September 30, 2010 before Administrative Law Judge Albert J. Velazquez ("ALJ"), with a supplementary hearing on May 4, 2011 to allow Buis and his counsel to review certain evidence that had been submitted anonymously. A second supplemental hearing was held on August 11, 2011 in order to obtain additional evidence from the testifying vocational expert. The Appeals Council denied Buis's second request for review on April 10, 2013, making the ALJ's decision the final decision for purposes of judicial review. Buis filed his Complaint with this Court on May 30, 2013.

## II.  Factual Background and Medical History

Buis applied for DIB and SSI in 2006, at the age of forty-six, due to his "[r]heumatoid arthritis; depression; tendinitis; restless leg syndrome; neuropathy; fibromyalgia; [and] myopathy."  [R. at 375.]  In his application, Buis reported that his ability to work is limited by his conditions because he can only stand for two hours at the most, he has a great deal of pain and weakness in his hands and feet, he is forced to spend a significant amount of time in bed due to this pain, and he now is depressed by his limitations.  [R. at 375.]  At the time of his application, Buis reported taking Cymbalia [sic] as an anti-depressant, Lorazepam to reduce his anxiety, Loritab to reduce his pain, and Prednisone to help increase his mobility.  [R. at 380.]

Over the years, Buis has seen several rheumatologists for his joint pain.  Dr. Steven Hugenberg treated Buis from September of 2003 through February of 2004, diagnosing Buis with "polyarthritis, most consistent with rheumatoid arthritis" and observing that he did not report improvement and was "quite depressed and tearful" because his unemployment benefits had expired and he had no other source of income.  [R. at 521-22; 540.]  From December of 2004

through July of 2005, Dr. Michael Stack treated Buis, reporting that he "improved on all counts" and had "really done very well," with a seventy percent increase in grip strength, despite reporting increased pain regarding his "rheumatoid arthritis with robust osteoarthritis of [the] spine." [R. at 625-26.] Beginning in July of 2006, after he had been off of his medication and without the care of a rheumatologist for "some time," Buis saw Dr. Harry Staley for his joint pain, which was diagnosed as inflammatory arthritis, through his date last insured. [R. at 1036 (initial consultation); R. at 1070 (diagnosis); Dkt. 22 at 7 (date range of treatment).] Two months after Buis returned to consistent medical treatment for his joint pain, Dr. Staley reported that Buis had a normal gait, full range of motion, no swelling, and only mild tenderness and pain. [R. at 1070.] In August of 2008,[1] Buis reported to Dr. Staley that he could perform most common daily activities with only some difficulty, would have much difficulty walking two miles and dealing with his depression and anxiety, but is able to successfully complete any such tasks. [R. at 1239.]

On referral, Buis began seeing professionals at Centerstone in December of 2006 for his mental health. [R. at 1203-06.] At his initial assessment, Buis was diagnosed with Major Depressive Disorder and given a score of 61 in a Global Assessment of Functioning (GAF). [R. at 1208.] In January of 2007 Glen Stephenson, a clinical psychologist with whom Buis met on a weekly basis during treatment, observed that Buis "appear[ed] to be in better spirits," and

---

[1] This appears to be Buis's last visit before his date last insured of September 30, 2008. There are reports from several visits that occurred after such date that have been submitted as evidence, including a Medical Source Statement completed by Dr. Staley on September 12, 2010. [R. at 1319-26.] In that statement, Dr. Staley reports that questions one through four were "answered by the patient," that his estimation of Buis's functional limitations in a competitive work environment was a "pure estimate" and no functional assessments were completed, and that he does now know whether Buis's limitations are better or worse than when he started treating Buis in July of 2006. [*Id.*] That being said, Dr. Staley reported that Buis is only able to sit for a total of four hours each day, can only stand for a total of two hours each day, is only capable of working a twenty-hour week, frequently experiences pain that interferes with his attention and concentration, would only be capable of performing handling and fingering for one third of an eight hour workday, and would have to miss more than three days each month due to his impairment or treatment. [*Id.*]

planned to exercise more often while adjusting his goals to be more achievable to prevent himself from becoming discouraged.  [R. at 1308.]  In February of 2007, Dr. Susan Schneider observed that Buis has "severe depressive symptoms," reporting that Buis has had suicidal thoughts in the past, but his religious beliefs and involvement prevent him from acting on such thoughts.  [R. at 1206.]  In April of 2007, Buis met with Dr. Schneider again, who reported that Buis had impulsively returned to work, unsuccessfully, and recommended that Buis return to therapy, even though he was ambivalent about coping with his depression.  [R. at 1105.]  On Dr. Schneider's recommendation, Buis returned to therapy with Mr. Stephenson, who had become "worried and concerned about [Buis's] future" due to an inability to cope with his physical limitations.  [R. at 1104.]  By June of 2007,[2] Dr. Schneider reported that Buis's symptoms of depression and anxiety were "[s]omewhat improved," but did not describe the progress when given the opportunity.  [R. at 1274.]

Several state agency medical consultants also submitted reports concerning Buis's medical conditions.  First, in July of 2006, Dr. Williams Shipley performed a psychological evaluation, finding that Buis is only mildly limited by his depression.  [R. at 1043-55.]  In September of 2006, Dr. Richard Wenzler performed a physical residual functional capacity assessment, concluding that Buis's allegations were only partially credible and noting that "the contentions regarding severity of, and the related functional restrictions, are not supported [by the medical evidence of record]."  [R. at 1066.]  Dr. Wenzler found that Buis is able to occasionally lift twenty pounds, frequently lift ten pounds, stand and/or walk for at least two hours per workday, and sit for about six hours per workday, noting several rheumatology reports

---

[2] This appears to be Buis's last visit before his date last insured of September 30, 2008.  Two years after such date, Mr. Stephenson submitted an affidavit regarding Buis's return to therapy in May of 2010, affirming that Buis was being treated for depression and has a tendency to impulsively push himself physically and suffer from increased pain as a result.

from 2005 regarding some improvement and remission of Buis's arthritis with treatment. [R. at 1062-63.] In November of 2006, Dr. Pressner affirmed the July psychological assessment performed by Dr. Shipley, and in December of 2006 Dr. Ruiz affirmed the September physical assessment performed by Dr. Wenzler. [R. at 1099-1100.]

At his first hearing, which was held before Administrative Law Judge L. Zane Gill in January of 2009, Buis and a vocational expert testified. Buis testified that he has lost mobility in his hands, causing him to have difficulty driving, tying his shoes, carrying groceries, and maintaining his hygiene. [R. at 134-35.] When discussing his failed work attempt in 2007, Buis testified that his work involved welding three-hundred pound access doors, which attempt left him nearly bedridden for a week in order to recover from this intense physical exertion. [R. at 129-31.] Because ALJ Gill failed to clarify Buis's sit/stand limitation in his hypothetical question to the vocational expert, the Appeals Council remanded the matter for further clarification. [R. at 165.]

On remand, Buis appeared before Administrative Law Judge Albert J. Velazquez ("ALJ") in September of 2010 and reported that he was in the process of going through a divorce. [R. at 88.] At this second initial hearing, Buis testified that, whether sitting or standing, his left foot goes numb and he gets back pain that makes it difficult to walk, causing him to need to lay down. [R. at 90-91.] Buis also testified that he can sit through two hours at church before going home to lay down, that he hasn't been bedridden since 2004, and that his pain levels have increased since the beginning of his divorce in July of 2010.[3] [R. at 94, 96, 102.] Buis's minister also testified at this second hearing, noting that Buis's activity levels and involvement have decreased, though he still comes at least twice a week, and now that he is living with his

---

[3] The Court notes that this aggravating factor commenced almost two years after Buis's date last insured in September of 2008.

mother he drives about twenty-five miles each direction to attend church.  [R. at 104-09.]  While earlier in the hearing Buis testified that his pain levels are between four and six on a normal day, when recalled to the stand he testified that his pain levels are generally around three or four without taking pain medication.  [R. at 91, 121.]

Also presented at this hearing was a yellow folder, presumably supplied by Buis's wife but submitted anonymously the day prior to the hearing, containing dozens of pages of evidence, some photographic, of Buis's activities, such as spending hours at the gym and going on hiking trips.  [R. at 113-17.]  Buis confirmed that the pictures were of him, but the ALJ continued the hearing to May of 2011to allow Buis a chance to review the evidence against him.  [R. at 53 (new hearing commencement), 124 (continuing the hearing).]  In response to the accusations that Buis drove much of the way to family vacations in Branson, Missouri and Cape Kennedy, Florida, Buis testified that they split up the driving and that they would switch drivers after about an hour or hour-and-a-half.  [R. at 54-56.]  Although there was photographic evidence of Buis playing horseshoes, Buis testified that he threw a horseshoe to commemorate the new horseshoe pit but did not play.  [R. at 58.]  There was also photographic evidence of Buis hiking throughout a state park, and Buis testified that he took the maximum amount of medication so that he could be a part of the family and was exhausted after the exertion.  [R. at 59.]  While it is alleged that Buis has been in charge of the upkeep of several rental properties pursuant to his separation agreement, Buis testified that he hires contractors to do most of the work and gets additional help from his sons.  [R. at 61-62.]  Although a private detective reported that Buis spent hours at the gym and at a coffee shop, Buis testified that he spent most of his time at the gym in the pool to get the inflammation out of his joints and at the coffee shop to have social interaction, as

recommended by his doctors.  [R. at 63-64.]  Buis also testified that the rental properties provide Buis with $2100 per month, but that maintenance fees exceed that amount.  [R. at 67-68.]

At this second hearing on remand, the vocational expert (VE) was able to testify.  After the ALJ presented the VE with a hypothetical question reflecting a certain residual functional capacity (RFC), the VE testified that Buis could work as a small product assembler, a plastic press operator, or an assembly press operator.  [R. at 70-71.]  When the ALJ reduced the lifting, standing, and walking ability in a second hypothetical question, the VE testified that Buis could work as a circuit board assembler, a surveillance systems monitor, and a table inspector in a factory setting.  [R. at 71-72.]  Finally, when reducing the handling and fingering ability to only occasionally, the VE testified that only surveillance systems monitor would be available to Buis, noting that sedentary, unskilled work is limited.  [R. at 72-74.]  However, Buis's counsel was not satisfied with the VE's testimony, as the VE cited to Bureau of Labor statistics for jobs numbers that allegedly included semi-skilled work as well as unskilled work.  [R. at 502-06.]  Thus, the ALJ scheduled a third hearing on remand, which was held in August of 2011, in order to address these concerns.  [R. at 38.]  At this supplemental hearing, the VE provided Buis's counsel with an "occupational quarterly" published by United States Publishing that provided jobs numbers for a surveillance systems monitor by skill level, which relied on "Standard occupational classification" (SOC) codes, and is further broken down by sedentary, light, medium, or heavy exertion levels.  [R. at 42-43.]  Buis's counsel also noted that the dictionary of occupational titles (DOT), on which all ALJs and VEs rely, came out in 1991, and after September 11, 2001 it is possible that the exertion requirements have increased.  [R. at 47-48.]  The VE acknowledged

that there may be stringent background checks, but the DOT describes the position as having a specific vocational preparation (SVP) of two,[4] which corresponds with unskilled work. [*Id.*]

## III.  Applicable Standard

To be eligible for SSI and DIB, a claimant must have a disability according to 42 U.S.C. § 423.[5]  Disability is defined as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  In determining whether a claimant is disabled, the Commissioner employs a five-step sequential analysis: (1) if the claimant is engaged in substantial gainful activity, he is not disabled; (2) if the claimant does not have a "severe" impairment that significantly limits her ability to perform basic work activities, he is not disabled; (3) if the Commissioner determines that the claimant's impairment meets any impairment that appears in the Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, App. 1, the claimant *is* disabled; (4) if the claimant is not found to be disabled at step three and he is able to perform his past relevant work, he is not disabled; (5) if the claimant can perform certain other available work, he is not disabled.  20 C.F.R. § 404.1520.

In reviewing the ALJ's decision, the ALJ's findings of fact are conclusive and must be upheld by this Court "so long as substantial evidence supports them and no error of law occurred."  *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).  The standard of

---

[4] Buis's counsel asked if any additional requirements since 1991 would increase the job's SVP to a three or four, but the VE opined on this question on opinion only and "[did not] have any kind of data source to be able to support" the assertion that the SVP may have increased.  [R. at 48.]]  The Court will thus disregard this conjecture.
[5] In general, the legal standards applied in the determination of disability are the same regardless of whether a claimant seeks DIB or SSI. However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations of statutes or regulations found in quoted court decisions.

substantial evidence is measured by whether "a reasonable mind might accept [the evidence] as adequate to support a conclusion." *Powers v. Apfel*, 207 F.3d 431, 434 (7th Cir. 2000) (quoting *Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995)). This court may not reweigh the evidence or substitute its judgment for that of the ALJ, but may only determine whether or not substantial evidence supports the ALJ's conclusion. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). The ALJ "need not evaluate in writing every piece of testimony and evidence submitted," *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993), but the ALJ must consider "all the relevant evidence," *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). In order to be affirmed, the ALJ must articulate his analysis of the evidence in his decision; he must "build an accurate and logical bridge from the evidence to [his] conclusion." *Dixon*, 270 F.3d at 1176.

## IV.  The ALJ's Decision

The ALJ first determined that Buis met the insured status requirements of the Act through September 30, 2008 and has not engaged in substantial gainful activity (SGA) since the alleged onset date of October 14, 2003. [R. at 14.] At step two, the ALJ found Buis's Rheumatoid Arthritis, Fibromyalgia, and Obesity, but not his Depression, to be the severe impairments that significantly interfere with his ability to perform basic work-related activities. [R. at 18.] However, at step three the ALJ found that Buis does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments through the date last insured. [R. at 18.]

After step three but before step four, the ALJ, after "careful consideration of the entire record," determined that Buis has the residual functional capacity (RFC) to perform "light work." [R. at 19.] Specifically, the ALJ found the following limitations to Buis's ability to perform light work:

[H]e has been able to stand and/or walk for four of eight hours during a typical eight-hour work day. Each hour during the workday, he would need to have the option to change postures from standing to seated or sitting to standing for one to two minutes before resuming the previous posture. He has not been able to climb ropes, ladders, or scaffolds. He is only able to climb ramps or stairs occasionally. He has not been able to crawl or kneel. The claimant must also avoid work around unprotected heights, around dangerous moving machinery, operating a motor vehicle or work around open bodies of water or open flames. In making this finding, I have considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence.

[R. at 19-20.] At step four, because returning to work as a sheet metal worker would exceed Buis's RFC, the ALJ expeditiously found that Buis is unable to perform his past relevant work. [R. at 22.] However, at step five the ALJ found that there were jobs that existed in significant numbers in the national economy during the five years in question that Buis could have performed, such as being an Assembly Press Operator or a Surveillance System Monitor. [R. at 23.] Based on these findings, the ALJ concluded that Buis was not disabled, as defined by the Act, from Buis's alleged onset date through his date last insured. [R. at 25.]

## V. <u>Discussion</u>

Buis raises six independent arguments as to why this Court should reverse the decision of the ALJ: (1) the ALJ improperly evaluated the opinion of Buis's "treating rheumatologist," Dr. Harry Staley (2) the ALJ improperly evaluated whether Buis's impairment or combination of impairments met or medically equaled Listing 14.09B, (3) the ALJ improperly evaluated the medical opinions of the state agency medical consultants, doctors Richard Wenzler and M. Ruiz, with regard to Buis's ability to stand and walk during an eight hour workday, (4) the ALJ improperly evaluated the credibility of the testimony of Buis, (5) the ALJ's step five finding was not supported by substantial evidence because the vocational expert failed to provide a proper

foundation for the number of jobs cited, and (6) the ALJ failed to evaluate the medical opinion of

Dr. Susan Schneider. [Dkt. 22 at 13-34.] The Court will address these issues in succession.

### A.    The Opinion of Dr. Harry Staley

Buis first argues, from several angles, that the ALJ should have given controlling weight

to Dr. Staley's September 12, 2010 functional assessment when deciding Buis's RFC. [*See* Dkt.

22 at 13-22.] It is the duty of the ALJ to consider the entirety of the record when making his

disability determination; "the ALJ may not simply ignore evidence." *Myles v. Astrue*, 582 F.3d

672, 676 (7th Cir. 2009). Specifically, "[i]n determining an individual's RFC, the ALJ must

evaluate all limitations that arise from medically determinable impairments, even those that are

not severe, and may not dismiss a line of evidence contrary to the ruling." *Villano v. Astrue*, 556

F.3d 558, 563 (7th Cir. 2009). However, when a medical opinion is not supported by "medically

acceptable clinical and laboratory diagnostic techniques," the opinion does not warrant

controlling weight in an RFC assessment. S.S.R. 96-8p. Additionally, **medical evidence that**

**post-dates the date last insured is "irrelevant" unless the report indicates that the**

**symptoms and limitations relate back to the relevant time period**. *See Eichstadt v. Astrue*,

534 F.3d 663, 667 (7th Cir. 2008).

The relevant portion of the September 12, 2010 functional report from Dr. Staley notes

that Buis can only work a part-time job, would miss more than three days per month, and cannot

perform fingering and handling for more than one third of an eight-hour workday. [R. at 1319-

26.] It is true that the ALJ does not discuss this particular report during his assessment of Buis's

RFC. [*See* R. at 20-22.] Buis argues that this is reversible error because Dr. Staley is Buis's

treating rheumatologist and therefore his opinion must be afforded controlling weight, as other

evidence of record does not speak to Buis's limitations on fingering and handling and therefore

does not conflict with this report.  [Dkt. 22 at 16-22.]  However, Social Security Ruling 96-8p is clear in stating that controlling weight can only be afforded to a treating physician when **both** the opinion does not conflict with other substantial evidence of record **and** the medical opinion is "well-supported" by clinical diagnostic techniques.  Here, Dr. Staley himself, in a preface to his own functionality report, writes that the report was "pure estimate" and notes that no functional assessments were completed.  [R. at 1321.]  Thus, the functional report is not supported by such clinical and laboratory findings necessary to warrant controlling weight pursuant to Social Security Ruling 96-8p.

However, even if the report had been supported by clinical findings and functional assessments, Dr. Staley wrote this report two years after Buis's date last insured of September of 2008.  When given the opportunity to comment as to whether Buis's observed functional limitations have improved or worsened, Dr. Staley wrote "don't know."[6]  [R. at 1324.]  As seen in *Eichstadt*, when such an assessment post-dates the date last insured and does not specifically relate back to the relevant period, the evidence is irrelevant.  Thus, the ALJ was not required to take this particular functional report from September of 2010 into account during his RFC assessment.[7]  To the extent that the ALJ's failure to articulate his reasons for ignoring this functionality report resulted in error, the error would be harmless, as the evidence, whether discussed or not, is irrelevant.  *See Prochaska v. Barnhart*, 454 F.3d 731 (7th Cir. 2006) (noting that the ALJ's harmless error, of failing to specifically address how the claimant's obesity impaired his ability to work, need not be addressed on remand).  Accordingly, the Court finds

---

[6] Although Dr. Staley failed to mention whether Buis's condition had improved or worsened by his September 2010 report, Buis himself testified that his pain levels have gone up since his divorce began in July of 2010.  [R. at 96.] Thus, in taking Buis at his word, his symptoms and limitations have worsened since his date last insured, and Buis did not suffer from the same severity of limitations during the relevant time period.

[7] Buis limits his argument to this September of 2010 functionality report.  The ALJ did discuss other sources of medical opinion from Dr. Staley during his RFC assessment [*see* R. at 20-22], and Buis does not argue that Dr. Staley's medical opinion was ignored [*see* Dkt. 22].

that the ALJ did not err in failing to address Dr. Staley's September 2010 functionality report or, in the alternative, that any error to do so was harmless.

## B. Listing 14.09B

Second, Buis argues that the ALJ improperly evaluated whether Buis's limitations meet or medically equal Listing 14.09B, inflammatory arthritis. [Dkt. 22 at 22-26.] In order to meet or medically equal Listing 14.09B, all three of the following requirements must be present: (1) "[i]nflammation or deformity in one or more major peripheral joints," (2) "[i]nvolvement of two or more organs/body systems with one of the organs/body systems involved to **at least a moderate level of severity**," and (3) "[a]t least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss)." 20 C.F.R. pt. 404, subpt. P, App. 1.

In support of his conclusion, the ALJ cited to several medical opinions to determine that Buis's arthritis did not meet or medically equal Listing 14.09B during the relevant time period. First, the ALJ noted Dr. Hugenberg's 2004 report that Buis "could make a 90% fist with fair grip strength in both hands and that his gait and strength were both normal." [R. at 18.] The ALJ then discussed that Dr. Stack, in 2005, "indicated that the disorder seemed to under [sic] good control." [*Id.*] The ALJ also discussion Buis's primary care physician's observations that Buis showed passive range of motion by fighting "with good motor"; that Buis, after stating that he could not move or take his shirt off because of weakness, "when distracted, put [his shirt] back on without any difficulty or facial grimacing"; and that "when [Buis] was distracted, he moved 'much more easily.'" [*Id.*] Also discussed by the ALJ was the consultative examination by the State Agency medical consultant, dated August of 2006, reporting that during testing Buis was able to walk on his heels, tandem walk, and squat without difficulty and that Buis's range of motion, grip strength, and fine finger skills were all normal. [R. at 19.]

Based on these medical opinions, the ALJ concluded that Buis's arthritis "does not cause the very serious limitations required by Section 14.09." [*Id.*]  Without at least a moderate level of severity, Listing 14.09B cannot be met.  Although Buis parses the language of "moderate severity" in his opening brief and asks the Court to do the same [Dkt. 22 at 24-25], to partake in this language dissection is akin to taking on the role of a medical expert, which is neither appropriate nor legal.  The Seventh Circuit in *Overman* makes it clear that this Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but may only determine whether or not substantial evidence supports the ALJ's conclusion.  Here, the Court must find that substantial evidence supports the decision of the ALJ when he supports his conclusion with "more than a mere scintilla [of evidence] . . . such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Stevenson v. Chater*, 105 F.3d 1151, 1153 (7th Cir. 1997) (quoting *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).  Here, the ALJ cited to a handful of medical opinions that reasonably support the conclusion that Buis's arthritis did not involve an organ/body system to at least a moderate level of severity, as required by Listing 14.09B.  Thus, the Court finds that substantial evidence supports the ALJ's conclusion that Buis's impairments did not meet or medically equal Listing 14.09B.

### C.     The Opinion of the State Agency Medical Consultants

Buis's third assertion is that the ALJ misinterpreted the medical opinions of the State Agency medical consultants in his conclusion that Buis is able to stand and/or walk for four hours during the workday.  [Dkt. 22 at 26-27.]  In September of 2006, as a part of a physical residual functional capacity assessment, Dr. Wenzler was given the option of selecting whether Buis could "[s]tand and/or walk (with normal breaks) for a total of [a] less than 2 hours in an 8-hour workday, [b] at least 2 hours in an 8-hour workday, [c] about 6 hours in an 8-hour workday,

14

or [d] medically required hand-held assistive device is necessary for ambulation." [R. at 1062.] Dr. Wenzler checked the "at least 2 hours in an 8-hour workday" box, and in December of 2006 Dr. Ruiz confirmed this assessment. [R. at 1062, 1100.]

In support of his argument, Buis claims that "[t]he state agency doctors found that Mr. Buis could stand and/or walk for **up to 2 hours** out of an eight hour workday, they meant that 2 hours was the maximum." [Dkt. 22 at 26.] This interpretation reflects a flawed reading of the plain language of the physical assessment form completed by Dr. Wenzler. The box that Dr. Wenzler checked does not, as Buis would have the Court believe, read "**up to**" two hours, but "**at least**" two hours. [R. at 1062.] The next option up read "about" six hours, so it can be inferred, in spite of the poor language choice in this form, that Dr. Wenzler assessed Buis as being able to stand or walk for "at least" two hours, but not quite at or "about" six hours during a workday. This inference is the exact inference made by the ALJ in determining that Buis is capable of standing and/or walking for four out of eight hours in a workday, which the Court confirms is sufficiently less than the "about" six hours of the next category. [R. at 19, 22.]

In further support of his mistaken assertion, Buis cites to the Social Security Program Operations Manual System (POMS) regarding the Completion of the Physical RFC Assessment Form, instructing the State Agency medical consultants "[w]here an individual can do a maximum amount greater than the amount checked (on a sustained basis), **describe and explain** the amount at the end of the pertinent section." POMS § DI 24510.050, *available at* https://secure.ssa.gov/apps10/poms.nsf/lnx/0424510050 (emphasis in original). Buis takes this instruction to affirm that, without further notation. Dr. Wenzler assessed that Buis cannot stand or walk for more than two hours during a workday. [Dkt. 22 at 26-27.] However, a close reading of the POMS further affirms the ALJ's conclusion. Because the POMS additionally

directs a State Agency medical consultant to "[c]heck the blocks . . . that represent the **maximum amount** the individual can clearly do on a **sustained** basis," a State Agency medical consultant, in order to limit a claimant's stand/walk capacity to "up to" two hours per workday that Buis alleges was the intent of Dr. Wenzler, would have to check the "less than 2 hours" box. POMS § DI 24510.050 (emphasis in original). If a State Agency medical consult were to limit a claimant's ability to "no more than" two hours, as also asserted by Buis, then the consultant would, according to the POMS, have to check the "less than" two hours box and explain separately that the claimant is capable of two hours per day, but no more. This was not the case. Instead, Dr. Wenzler checked that Buis is capable of standing and/or walking for "at least" two hours, but not quite six hours, during a workday, which the ALJ properly took into account when he assessed Buis with an RFC of four hours of standing and/or walking per day. Thus, the Court will not reverse and remand for a supplemental hearing on the issue.

### D.     Mr. Buis's Credibility

Buis's fourth argument asserts that the ALJ's credibility determination improperly discredited Buis's testimony that he has problems with fingering and handling, finding Buis only "partially credible." [Dkt. 22 at 27-29.] In order to make an RFC determination, the ALJ must consider the claimant's symptoms, such as pain, by first determining whether a medically determinable impairment could reasonably be believed to produce such symptoms and, second, by evaluating the claimant's "statements about the intensity, persistence, and limiting effects" of the symptoms, which evaluation requires the ALJ to make a credibility finding. 20 C.F.R. § 404.1529.[8] When making a credibility finding, "an ALJ must adequately explain his credibility

---

[8] In his opening brief, Plaintiff incorrectly attributes this standard to 20 C.F.R. § 404.929. [Dkt. 22 at 28.] Such error is clear, as the section to which Buis cites contains only one paragraph of general information regarding "[h]earing before an administrative law judge." 20 C.F.R. § 404.929. Further, the Court notes that the bold assertion "[m]ental illness must be considered in combination with other impairments in determining credibility"

finding by discussing specific reasons supported by the record." *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013). However, so long as the ALJ gives such "specific reasons" for his credibility findings, the ALJ's measure of the credibility of the witnesses is given great deference; only a "patently wrong" determination will be overturned. *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008).

In this matter, the ALJ first found that Buis's inflammatory arthritis, fibromyalgia, and obesity affect his functionality. [R. at 21.] The ALJ then summarized Buis's allegations of his own functional limitations, including hour-long morning stiffness, burning pain with repetitive use of his hands, back and joint pains aggravated by prolonged standing, walking, or sitting, and fatigue after walking thirty feet. *Id.* However, the ALJ also acknowledged that Buis was able to walk for over six minutes on a treadmill and that he was depicted in photographs partaking in "road trips, hikes, and various outings," suggesting that Buis has not been bedridden since his alleged onset date. *Id.* Also, when Buis addressed the photographs at a supplemental hearing, he conceded that he manages three rental properties, with the help of contractors, and that he goes to the gym once per week for two or three hours, with the help of Vicodin. *Id.* As the Court has already discussed, the ALJ had previously noted Buis's primary care physician's observations that Buis fought the range of motion test "with good motor" and that, after complaining of an

---

[Dkt. 22 at 29] is **not** supported, either directly or indirectly, by the cases provided—*Mendez v. Barnhart* concludes that the ALJ "failed to consider the totality of Mendez's impairments" when determining Mendez's ability to complete tasks outside of the home, 439 F.3d 360, 363 (7th Cir. 2006), and *Gentle v. Barnhart* concluded that the ALJ was required to take Gentle's psychiatric problems into account when evaluating her ability to enter the workforce, 430 F.3d 865, 868 (7th Cir. 2005). These cases do not even review the ALJ's credibility determinations, and it should have been evident to Plaintiff's counsel that it was erroneous to present to the Court his false assertion. It is imperative that Plaintiff's counsel be aware of his duty of candor to this, and any other, Court: "A lawyer shall not knowingly make a false statement of fact or law to a tribunal." Ind. R. of Prof'l Conduct R. 3.3 (2013). The Court trusts that such citation errors will not become a recurring theme and that Mr. Shull is now aware of his misrepresentations. Ironically, Plaintiff's counsel utilized the maximum number of pages permitted in his submissions, and the Court recommends that Plaintiff's counsel take particular care in prioritizing quality over quantity in the future.

inability to remove his shirt due to pain and weakness, Buis put his shirt back on "without any difficulty or facial grimacing" when he was distracted.[9]  [R. at 18.]

After making these observations, the ALJ concluded that Buis "is only partially credible." This reasoning, though not as extensive as possible, is sufficient to meet the requirement that the ALJ provide "specific reasons" for his credibility determination.  Additionally, the Court notes that the ALJ's credibility finding is consistent with State Agency medical consultant Dr. Wenzler's observation that Buis's "allegations and contentions regarding the nature and severity of the impairment-related symptoms and functional limitations are found to be partially credible."  [R. at 1066.]  The Court also notes that even during the course of one hearing Buis displayed a propensity to give inconsistent testimony, first claiming to have daily pain between four and six on a scale of ten but just one hour later testifying that his pain is usually at a three or four before taking medication.  [R. at 91, 121.]  Accordingly, the Court finds that the ALJ's credibility decision was not patently erroneous.

### E.      The Testimony of the Vocational Expert

Fifth, Buis takes issue with the fact that the vocational expert (VE) relied on the U.S. Department of Labor's Dictionary of Occupational Titles (DOT) and the Occupational Quarterly by U.S. Publishing ("Occupational Quarterly") for his testimony regarding the availability of certain jobs.  [Dkt. 22 at 30-34.]  In order for an ALJ's step five determination to be supported by substantial evidence, any VE testimony that the ALJ relied on in reaching his conclusion must be "reliable."  *McKinnie v. Barnhart*, 368 F.3d 907, 910 (7th Cir. 2004).  While Rule 702 of the Federal Rules of Evidence "does not strictly apply to disability adjudications," evidence is not

---

[9] Although the ALJ included this testimony in a prior section of his decision, the Court employs the doctrine of substance over form when evaluating an ALJ's decision on appeal.  *West v. Colvin*, 10 C 5761, 2013 WL 3728807 (N.D. Ill. July 16, 2013) ("Social Security cases are not an exception to the basic principle that law addresses itself to actualities, to substance over form") (citing to *Blue Cross Blue Shield of Massachusetts, Inc. v. BCS Ins. Co.*, 671 F.3d 635 (7th Cir.2011); *American Bank v. City of Menasha*, 627 F.3d 261, 267 (7th Cir.2010)).

substantial if the VE's testimony "has been conjured out of whole cloth." *Donahue v. Barnhart*, 279 F.3d 441, 446 (7th Cir. 2002). While it is permissible for a VE to provide conclusory testimony, "any data or reasoning underlying the VE's bottom line must be 'available on demand.'" *Britton v. Astrue*, 521 F.3d 799, 803 (7th Cir. 2008) (quoting Donahue v. Barnhart, 279 F.3d 441, 446 (7th Cir.2002)). The Social Security Administration (SSA) has clarified that it will "rely primarily on the DOT . . . for information about the requirements of work in the national economy," and an ALJ "may not rely on evidence provided by a VE . . . if that evidence is based on underlying assumptions or definitions that are inconsistent with [the SSA's] regulatory policies or definitions." S.S.R. 00-4p.

In this matter, the VE first testified that the source for the jobs numbers provided was provided by the U.S. Bureau of Labor Statistics, broken down by "types of work" and by state. [R. at 75-79.] When Plaintiff's counsel asked for the government records substantiating the VE's conclusions, the ALJ noted that the information should be publically available on the Internet, but that he would make other arrangements should Plaintiff's counsel have any problems accessing the information free of charge. [R. at 80.] After receiving Plaintiff's counsel's brief requesting further information from the VE, the ALJ set a supplemental hearing. [R. at 38.] At this supplemental hearing, Plaintiff's counsel asked the VE how the jobs numbers were additionally broken down by level of exertion, such as unskilled, and the VE testified that U.S. Publishing was his source for that data, which basis its figures on the standard occupational classifications (SOC) and occupational employment statistics (OES). [R. at 41-42.] Plaintiff's counsel then objected to the VE's reliance on this information, asserting that U.S. Publishing uses "no method" and submitted a brief containing further explanation of his objection. [R. at 44-45, 510-11.] In his supplemental brief to the supplemental hearing, Plaintiff's counsel alleged

that the VE's testimony "is unreliable under <u>Donahue</u> standards" and that U.S. Publishing's direction "that users should override this with local knowledge or common sense when appropriate" meant that the VE's failure to supplement the information causes his testimony to be unreliable. [R. at 511.]

Plaintiff's counsel seems to misinterpret the standard set for by the Seventh Circuit in *Donahue*. Buis's opening brief cites directly to *Donahue* to review Rule 702 and to state that "the ALJ has a duty to make an inquiry (similar but not necessarily identical to Rule 702) to find out whether the VE's conclusions are reasonable." [Dkt. 22 at 30.] A look at the precise language of the Seventh Circuit in *Donahue* undermines this statement, however, as the Seventh Circuit wrote that "Rule 702 **does not** apply to disability adjudications, a hybrid between the adversarial and the inquisitional models," adding that "experts should use **reliable** methods" because "[e]vidence is not 'substantial' if vital testimony has been conjured out of whole cloth." *Donahue v. Barnhart*, 279 F.3d 441, 446 (7th Cir. 2002) (emphasis added). In other words, Plaintiff's counsel would have this Court draw a stricter standard than that laid down by the Seventh Circuit, which the Court will not do.

In applying the proper standard to the case at hand, it would appear that the U.S. Publishing numbers provided by the VE are sufficiently reliable. Buis relies on *Duke v. Astrue* to indicate otherwise, but in that case the vocational expert testified that his testimony was based on "market surveys," which he was unable to provide to the judge or plaintiff's counsel. 1:07-CV-00188, 2008 WL 3992251 (N.D. Ind. Aug. 27, 2008) (Here, rather than producing facts, data, and reliable methodology, the VE admitted during his testimony that he essentially relied on his own experience in reaching his bottom-line conclusions"). Here, although Plaintiff's counsel emphasizes that it was established that U.S. Publishing "was not a government agency,

but a private agency," Plaintiff's counsel cites to no precedent to support the inference that only government agency statistics are "reliable." [Dkt. 22 at 31-34.] Further, Social Security Ruling 00-4p requires an ALJ to inquire into the VE's testimony when there is evidence that potentially conflicts with a policy of the SSA, and here the ALJ thoroughly discussed the VE's testimony and concluded that it was "generally consistent with the information contained in the <u>Dictionary of Occupational Titles</u>." [R. at 23-25.] Accordingly, the Court finds that the ALJ's step-five determination is based on reliable evidence and is therefore supported by substantial evidence.

### F.    The Opinion of Dr. Susan Schneider

Finally, Buis argues that the ALJ "failed to evaluate the opinion of Dr. Susan Schneider." [Dkt. 22 at 34.] It is the duty of the ALJ to consider the entirety of the record when making his disability determination; "the ALJ may not simply ignore evidence." *Myles v. Astrue*, 582 F.3d 672, 676 (7th Cir. 2009). While the ALJ "need not evaluate in writing every piece of testimony and evidence submitted," *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993), it is impermissible to "cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding" *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010). Only when there is "reason to believe that an ALJ ignored important evidence" does reversible error exist. *Walters v. Astrue*, 444 Fed.Appx. 913, 917 (7th Cir. 2011).

Specifically, Buis argues that the ALJ did not properly take into account Dr. Schneider's opinion that Buis is "quite disabled by" his "[m]ajor depression," which was noted to be "recurrent, severe." [R. at 1105, 1111.] In his opinion, the ALJ first addressed Buis's depression by acknowledging that the State Agency medical consultants found that Buis's limitations due to his depression are no more than mild, noting that "[t]he record does not contain any treating source statements that contain a detailed evaluation of any deficits in these areas." [R. at 14-15.]

That being said, the ALJ then discussed both exhibits containing Dr. Schneider's treatment notes from early 2007: Buis was diagnosed with "major depression and dyslexia," but then "took a hiatus from counseling," during which time Buis had positive results by maintaining a "disciplined exercise program" and attempted to return to work; unable to tolerate the physical demands of the sheet metal work, the work attempt failed and Buis was left "feeling distressed anxious and depressed," but he cancelled future appointments "due to insurance concerns." [R. at 15.] Based on this evidence provided by Buis, the ALJ observed that Buis's inability to work leads to frustration and anger, but "these records contain very little in the way of objective findings that would document the presence of a severe, medically determinable mental impairment." [R. at 16.]

Specifically, Buis argues that, because the ALJ did not specifically discuss the "severe" nature of Buis's depression, only noting that the depression was "major," is indication that the ALJ did "not consider and evaluate all medical opinions." [Dkt. 22 at 35.] However, it is not necessary for an ALJ to discuss every word of the medical record—especially a record that spans for over 1600 pages. The Seventh Circuit explained in *Carlson* that, so long as "the ALJ considered the important evidence" in a manner that enables the reader "to trace the path of the ALJ's reasoning," the ALJ does not err. 999 F.2d at 181. Here, the ALJ has done just that, citing to the very exhibit that Buis contends was not sufficiently addressed and explaining that the same clinical records are sparse and indicate that Buis's depression is frustration based. The ALJ's conclusion is further supported by the State Agency reviewing psychologists, who found Buis to be only mildly limited by his psychological condition and observed that Buis "was alert and oriented with appropriate affect" and "extremely kind," reporting decreased socialization but an ability to cook, do laundry, drive, run errands, handle finances, attend church, and watch

movies. [R. at 1055, 1099.] Thus, the Court finds that the ALJ did not fail to evaluate the opinion of Dr. Susan Schneider, and substantial evidence supports the ALJ's determination that Buis's depression was not a severe impairment, as defined by the Act.

## VI. <u>Conclusion</u>

For the aforementioned reasons, the Court finds that substantial evidence supports the ALJ's determination that Buis is not disabled. Accordingly, the Magistrate Judge recommends that the Commissioner's decision be **AFFIRMED**. Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), and failure to timely file objections within fourteen (14) days after service shall constitute a waiver of subsequent review absent a showing of good cause for such failure.

Date: _06/30/2014_

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Joseph W. Shull
jshull@joeshull.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov