UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| RICHARD D. BUIS, | ) | |
| --- | --- | --- |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 1:13-cv-00878-RLY-MJD |
| | ) | |
| CAROLYN W. COLVIN, Acting | ) | |
| Commissioner of the Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**ENTRY ADOPTING IN PART AND REJECTING IN PART THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff, Richard D. Buis, appeals the Administrative Law Judge's decision denying his application for social security disability benefits. Pursuant to 28 U.S.C. § 636, the court referred the matter to the Magistrate Judge (Filing No. 38), who submitted his report and recommendation on August 6, 2014. (Filing No. 39). The Plaintiff objects to the Magistrate Judge's report and recommendation. (Filing No. 40). The Commissioner did not respond to Buis's objections. For the reasons set forth below, the court **ADOPTS in part** and **REJECTS in part** the Magistrate Judge's report and recommendation.

**I.     Background**

Buis applied for Social Security Disability Benefits and Supplemental Social Security Income at the age of forty-six due to his "[r]heumatoid arthritis; depression; tendinitis; restless leg syndrome; neuropathy; fibromyalgia; [and] myopathy." (R. at

1

375). In his application, Buis reported that his ability to work is limited by his conditions because he can stand for two hours at the most, he has a great deal of pain and weakness in his hands and feet, he is forced to spend a significant amount of time in bed due to this pain, and he is now depressed by his limitations. (R. at 375).

Buis filed his application on June 30, 2006, alleging an onset date of October 14, 2003. Buis acquired sufficient quarters of coverage[1] under sections 216(i) and 223 of the Social Security Act to remain insured through September 30, 2008 (hereinafter "the date of last insured" or "DLI"). Thus, Buis must establish disability on or before that date to be entitled to a period of disability and disability insurance benefits. Buis's application was initially denied on September 18, 2006. On January 21, 2009, a hearing was held before an Administrate Law Judge ("ALJ"). That ALJ's decision was remanded to specify Buis's sit/stand limitations. A second hearing was held on September 30, 2010, before a different ALJ, with a supplemental hearing on May 4, 2011, to allow Buis to review evidence that had been submitted anonymously. A second supplemental hearing was held on August 11, 2011, to obtain additional evidence from the vocational expert ("VE").

The second ALJ found that Buis had the following severe impairments: rheumatoid arthritis, fibromyalgia and obesity. After reviewing the mental health functional areas, the ALJ found that Buis's depression caused only a "mild" limitation.

---

[1] According to the Social Security website, "a [quarter of coverage] is the basic unit for determining whether a worker is insured under the Social Security program." *See* http://www.socialsecurity.gov/oact/cola/QC.html.

The ALJ concluded that Buis was not under a disability at any time from the alleged onset date through the date of last insured. Buis appealed to the Appeals Council, which denied his request for review. Buis filed his complaint in this court on May 30, 2013.

The court will incorporate any additional facts as necessary throughout the discussion portion. For a more thorough review of the facts, the court adopts the fact portion of the Magistrate Judge's report and recommendation. (Filing No. 39, at ECF pp. 1-8).

## II. Standard

### A. Review of Magistrate Judge's Report and Recommendation

When a party raises specific objections to elements of a magistrate judge's report and recommendation, the district court reviews those elements *de novo*, determining for itself whether the magistrate judge's decision as to those issues is supported by substantial evidence or was the result of an error of law. FED. R. CIV. PRO. 72(b). The district court "'makes the ultimate decision to adopt, reject, or modify' the report and recommendation, and it need not accept any portion as binding;" the court may, however, defer to and adopt those conclusions where a party did not timely object. *Sweet v. Colvin*, No. 1:12-cv-00439-SEB-TAB, 2013 WL 5487358, * 1 (S.D. Ind. Sept. 30, 2013) (quoting *Schur v. L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 759–761 (7th Cir. 2009)).

### B. Review of the ALJ's Decision

In reviewing the Commissioner's factual findings, courts are deferential; if her findings are supported by substantial evidence, then courts must affirm. *See Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004); *see also* 42 U.S.C. § 405(g). "Although a

3

mere scintilla of proof will not suffice to uphold an ALJ's findings, the substantial evidence standard requires no more than such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Blakes v. Barnhart*, 331 F.3d 565, 568 (7th Cir. 2003). In other words, substantial evidence is more than a scintilla, but less than a preponderance of the evidence. *See Wood v. Thompson*, 246 F.3d 1026, 1029 (7th Cir. 2001). Nevertheless, the ALJ is obligated "to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding." *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010). An ALJ is not required to discuss every piece of evidence, but if the decision lacks an adequate discussion of the issues, the court will remand it. *See Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010). An adequate discussion ensures that the ALJ built a logical bridge from the evidence to his conclusion. *Denton*, 596 F.3d at 425.

**III. Discussion**

Buis raises six arguments as to why the court should reverse the decision of the ALJ. They are: (1) the ALJ improperly evaluated the opinion of Buis's "treating rheumatologist," Dr. Harry Staley; (2) the ALJ improperly evaluated whether Buis's impairment or combination of impairments met or medically equaled Listing 14.09B; (3) the ALJ improperly evaluated the medical opinions of state agency medical consultants, doctors Richard Wenzler and M. Ruiz, with regard to Buis's ability to stand and walk during an eight hour work day; (4) the ALJ improperly evaluated the credibility of the testimony of Buis; (5) the ALJ's step five finding was not supported by substantial

4

evidence because the vocational expert failed to provide a proper foundation for the number of jobs; and (6) the ALJ failed to evaluate the medical opinion of Dr. Susan Schneider. The Magistrate Judge rejected each of the six reasons. Buis objects to each of the six conclusions of the Magistrate Judge in his report and recommendation. The court will consider each in turn.

### A. The Opinions of Dr. Harry Staley

Buis first argues that the ALJ committed reversible error by failing to consider the September 12, 2010, assessment of Dr. Staley, Buis's treating rheumatologist. That assessment noted that Buis had "intermittent pain and swelling; erosions of joints at base of toes in both feet; chronic pain in fingers of both hands with swelling and chronic pain in both shoulders and both knee[s]." (R. 1319). Additionally, he noted that the pain was moderate to severe. (R. 1319). The report states that emotional distress and/or psychological factors contribute to Buis's symptoms and functional limitations. (R. 1320). Additionally, Dr. Staley estimated the number of hours Buis can sit and stand/walk during an 8 hour workday; he found that Buis could not maintain full time employment and would miss more than three days of work per month. (R. 1321-1322, 1324). Further, Dr. Staley found that Buis has significant limitations in doing repetitive handling or fingering.[2] Specifically, Dr. Staley estimated that during an 8-hour workday, Buis could perform handling and fingering with each hand for only 1/3 of an 8-hour

---

[2] "Handling is seizing, holding, grasping, turning, or otherwise working primarily with the whole hand or hands; and fingering involves picking, pinching, or working primarily with the fingers." (R. 1323).

5

workday (R. 1323-1324). Finally, Dr. Staley said he did not know if the limitations he set forth would have been better or worse when he first started treating Buis in July of 2006. (R. 1324).

Notably, the ALJ did not discuss this particular report; this much is undisputed. (R. 20-22). Rather the dispute centers around whether reversible error was committed in not discussing the report and what weight must be given to the report. According to Buis, this report is entitled to controlling weight because it was prepared by a treating physician. The Magistrate Judge first found that the report was not entitled to controlling weight because it is not supported by clinical and laboratory findings necessary to warrant controlling weight pursuant to Social Security Ruling 96-8p. Second, the Magistrate Judge concluded that even if it were adequately supported, it is irrelevant because the report post-dated the date of last insured and does not relate back to Buis's pre-DLI condition. The court will consider the second argument first.

The Magistrate Judge relied on *Eichstadt v. Astrue*, 534 F.3d 663 (7th Cir. 2008) to reach his conclusion. In *Eichstadt*, the Seventh Circuit found that the ALJ did not fail to consider evidence, contrary to the claimant's allegations. *Id.* at 667. The Court reasoned that the ALJ had considered such evidence but found it to be irrelevant because it did not address the correct time period. *Id.* Additionally, the Court emphasized that the ALJ gave no weight to the opinion because the doctor did not begin to treat the patient until twelve years after the DLI. *Id.*

Buis argues that his case is distinguishable from *Eichstadt* for three reasons: (1) Dr. Staley treated Buis prior to the DLI, (2) Buis's primary diagnosis of rheumatoid

arthritis was well established prior to the DLI, and (3) there is considerable pre-DLI evidence that supports the opinion of Dr. Staley. Additionally, Buis relies on *Halvorsen v. Heckler*, 743 F.2d 1221, 1226 (7th Cir. 1984). In that case, the Seventh Circuit held that the ALJ's failure to consider the post-DLI records mandated reversal of the case. *Id.* Additionally, the Seventh Circuit stressed that such evidence should not be viewed in isolation. *Id.*

The court agrees with Buis that pursuant to applicable Seventh Circuit case law, the ALJ was required to consider the post-DLI evidence. The ALJ could have articulated reasons why such evidence was irrelevant; however, he did not. The ALJ cannot simply ignore evidence from a treating physician that he disagrees with. *See Denton*, 596 F.3d at 425. As such, the court will examine whether the ALJ evaluated post-DLI evidence supplied by Dr. Staley.

Although the ALJ did not evaluate the September 2010 report, he did consider the May 31, 2011, assessment from Dr. Staley, and found the following:

> The only findings that Dr. Staley cites in making the assessment concerning use of the hands are swelling and tenderness of the small joints in his hands and some remote, abnormal laboratory findings. In my opinion, these findings do not justify limiting the claimant to only occasional use of the hands.

(R. 22) (citing R. 1554). The ALJ discounted Dr. Staley's findings because they were not consistent with other evidence in the record. That evidence includes the report from Dr. Iodoro, Buis's primary-care physician. Dr. Iordoro observed that Buis "has passive [range of motion] of the joints but fights it with good motor." (R. 1014).

7

After reviewing the ALJ's opinion, the court concludes that the ALJ's findings were based on a determination that disabling rheumatoid arthritis is inconsistent with a full range of motion. This is, however, "quintessentially a matter for medical judgment" that the ALJ cannot determine. *See Liskowitz v. Astrue*, 559 F.3d 736, 741 (7th Cir. 2009) ("It is quintessentially a matter for medical judgment whether disabling rheumatoid arthritis is consistent with 'a full range of motion' or 'joint synovitis.'"). The medical records supplied by Dr. Iodoro do not address limitations regarding the use of the hands, thus they are not necessarily inconsistent with Dr. Staley's findings. In fact, the evidence in the record, submitted by Dr. Staley, explains that:

> Granted [Buis] has full motion in his fingers and hands because although he has swelling, there is no significant damage to the joints. However, the nature of his illness is that any repetitive activity leads to excessive swelling and pain. Therefore, most of the work he can do with his hands would be on a very limited basis and only on an intermittent basis.

(R. 1554). The ALJ fails to articulate why Dr. Staley's statement indicating that a full range of motion may still be consistent with a very limited use of the hands conflicts with other evidence. As such the court finds that the ALJ failed to build the requisite logical bridge. Therefore, the court **REJECTS** the Magistrate Judge's recommendation on this ground and instead orders this issue remanded for reconsideration by the ALJ.

### B. Listing 14.09B

The Magistrate Judge found that substantial evidence supported the ALJ's conclusion that Buis's impairments did not meet or medically equal Listing 14.09B. Specifically, the ALJ found:

8

> [t]he foregoing evidence indicates that the claimant's impairment does not cause the very serious limitations required by Section 14.09. The claimant may have some limitations on his ability to stand and/or walk throughout a workday or lift more than twenty pounds. However, he has not had persistent inflammation and he is able to ambulate and to perform fine and gross movements.

(R. 19).

Buis objects to this finding, arguing that the ALJ and Magistrate Judge misunderstood the requirement of a "moderate level" of severity in 14.09B. To meet Listing 14.09B, the claimant must show the following three requirements: (1) "inflammation or deformity in one or more peripheral joints," (2) "involvement of two or more organs/body systems with one of the organs/body systems involved to at least a moderate level of severity," and (3) "at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss)." 20 C.F.R. pt. 404, subpt. P, App. 1. Severe fatigue is defined as "a frequent sense of exhaustion that results in significantly reduced physical activity or mental function." Listing 14.00C. "Malaise means frequent feelings of illness, bodily discomfort, or lack of well-being that result in significantly reduced physical activity or mental function." Listing 14.00C. According to Buis, moderate severity refers to medical terminology, not legal terminology. *See* Listing 14.00C.12 ("*Severe* means medical severity as used by the medical community. The term does not have the same meaning as it does when we use it in connection with a finding at the second step of the sequential evaluation process in Sections 404.1520, 406.920, and 416.924.") (italics in original).

9

The court cannot determine from the ALJ's opinion whether he considered Listing 14.09B. The ALJ concluded that Buis's impairments do not cause the "very serious limitations required by Section 14.09;" however these is no indication whether the limitations would amount to a moderate level of severity as required by 14.09B. As such the court cannot conclude that sufficient evidence supports the ALJ's finding that Buis's impairments do not satisfy listing 14.09B. The court **REJECTS** this portion of the Magistrate Judge's report and recommendation, and finds that this issue should be remanded to the ALJ for further consideration.

## C. The Opinions of the State Agency Medical Consultants

Buis also contends that the ALJ misconstrued the medical opinions of the State Agency medical consultants when he concluded that Buis is able to stand and/or walk for four hours during the workday. Specifically at issue is part of a physical residual functional capacity assessment completed by Dr. Wenzler. As part of the assessment, Dr. Wenzler faced the following question concerning Buis's limitations:

3. Stand and/or walk (with normal breaks) for a total of –

☐ Less than 2 hours in an 8-hour workday

☐ At least 2 hours in an 8-hour workday

☐ About 6 hours in an 8-hour workday

☐ Medically required hand-held assistive device is necessary for ambulation

(R. 1062). On September 14, 2006, Dr. Wenzler marked the box stating at least 2 hours in an 8-hour workday. (R. 1062). Dr. Ruiz confirmed this assessment on December 2, 2006. (R. 1070).

From this information, the ALJ determined that Buis could stand and/or walk with normal breaks for a total of 4 hours in an 8-hour workday. (R. 19-22). According to Buis, the state agency doctors found that he could stand and/or walk for up to 2 hours, but no more. The Magistrate Judge found Buis's interpretation to be flawed; rather, according to the Magistrate Judge, "Dr. Wenzler assessed Buis as being able to stand or walk for 'at least' two hours, but not quite at or 'about' six hours during a workday." Filing No. 39, at ECF p. 15).

Buis relies on the relevant provisions of the Program Operations Manual System ("POMS") to support his argument. The POMS explains that in responding to the questions on the form containing the question above, the assessor should check the blocks that represent the maximum amount the individual can clearly do on a sustained basis and if an individual can do a maximum amount greater than the amount checked, the assessor should describe and explain the amount at the end of the section. PMS DI 24510.050C I.A., *available at* https://secure.ssa.gov/apps10/poms.nsf.lnx/0424510050. Thus, Buis contends that two hours is the maximum because no explanation was given explaining how he can do more than the "at least two hours."

The court agrees with the Magistrate Judge's findings. Basic math teaches that the term "at least" means an amount greater to or equal to the number following it. Thus, by checking that box, Dr. Wenzler found that Buis could stand or walk for two hours or

more and less than the 6 hours in the next choice. Although the question is poorly worded in light of the POMS request to establish a maximum amount, the answer still reveals that a maximum amount would be under 6 hours. The court finds that the ALJ did not misinterpret this evidence; therefore, the court will not reverse and remand for a supplemental hearing on this issue. The court **ADOPTS** this portion of the Magistrate Judge's report and recommendation.

### D. Mr. Buis's Credibility

The ALJ concluded that Buis was partially credible. The ALJ found Buis's statements concerning the intensity, persistence and limiting effects of Buis's symptoms were not credible to the extent they are inconsistent with the ALJ's residual functional capacity assessment. (R. 20). The ALJ further explained that the medical evidence does not show a condition that would preclude sitting and cites examples of Buis visiting a health club and going on road trips. Additionally, the ALJ found that Dr. Staley's assessment on May 31, 2011, limiting Buis to the occasional use of his hands was inconsistent with other evidence in the record, such as the reports from Dr. Iodoro and Buis's own testimony. The Magistrate Judge found that the ALJ adequately explained his credibility determination and that it was not patently erroneous.

In reviewing credibility, the court will not "upset credibility determinations on appeal so long as they find some support in the record and are not patently wrong." *Herron v. Shalala*, 19 F.3d 329, 335 (7th Cir. 1994). The ALJ must give specific reasons for his credibility determination. When these reasons rely on objective factors or fundamental implausibilities, the court has greater freedom to review the ALJ's decision.

12

*Id.* Buis urges the court to use this greater freedom to overturn the ALJ's credibility determination.

Buis argues that the evidence submitted by Dr. Harry Staley supports his assertions and thus the determination was patently erroneous. Because the court is remanding this case on the issue of whether the ALJ gave proper weight to Dr. Staley's reports, the ALJ should re-evaluate his credibility determination after reviewing the evidence from Dr. Staley. Thus, the court **REJECTS** this portion of the Magistrate Judge's report and recommendation and this issue is remanded.

### E. The Testimony of the Vocational Expert

Fifth, Buis objects to the Magistrate Judge's determination that the testimony provided by the vocational expert ("VE") is reliable. In order for an ALJ's step five determination to be supported by substantial evidence, any VE testimony relied on in reaching his conclusion must be "reliable." *McKinnie v. Barnhart*, 368 F.3d 907, 910 (7th Cir. 2004). Federal Rule of Evidence 702 "does not strictly apply to disability adjudications." *Donahue v. Barnhart*, 279 F.3d 441, 446 (7th Cir. 2002). However, evidence is not substantial if the VE's testimony "has been conjured out of whole cloth." *Id.* Finally, while it is permissible for a VE to provide conclusory testimony, "any data or reasoning underlying the VE's bottom line must be 'available on demand.'" *Britton v. Astrue*, 521 F.3d 799, 803 (7th Cir. 2008) (quoting *Donahue*, 279 F.3d at 446).

Buis offers two reasons why the VE's testimony is not reliable. First, Buis argues that the VE had inconsistent testimony regarding the source of his numbers concerning available jobs. A quick review of the transcript shows that the VE was not inconsistent.

13

At the first hearing, the VE testified that the job numbers he was referencing came from the current population survey from the Bureau of Labor statistics. This information is broken down by "types of work" and by state. At the second hearing, Buis's attorney asked the VE how he broke down the jobs by the level of exertion. The VE testified that the break down by skill or exertional level was done using information from U.S. Publishing. U.S. Publishing bases its figures on the standard occupational classifications and occupational employment statistics. The VE used different sources to classify the number of jobs based on different criteria. This does not show any inconsistency on the part of the VE. Thus, the court rejects this argument.

Second, Buis argues that U.S. Publishing is not a reliable source because it randomly assigns Dictionary of Occupational Titles numbers to its data and does not show its methodology and margin of error on its website. In support of this argument, Buis relies on a book written by a social security plaintiff's attorney titled *Social Security Disability Advocate's Handbook*. (R. 511). The Magistrate Judge noted that "the ALJ thoroughly discussed the VE's testimony and concluded that it was 'generally consistent with the information contained in the Dictionary of Occupational Titles.'" (Filing No. 39, at ECF p. 21) (citing R. 23-25). After a review of the ALJ's decision, the court agrees with the Magistrate Judge and finds that the VE's testimony is reliable. The court, therefore, **ADOPTS** this portion of the Magistrate Judge's report and recommendation.

 **F.** **The Opinion of Dr. Susan Schneider**

Buis objects to the Magistrate Judge's finding that the ALJ properly evaluated the opinion of Dr. Susan Schneider, a psychiatrist treating Buis. Buis states that the ALJ

14

erred in three ways by not considering Dr. Schneider's opinion that he was "quite disabled" by his major depression. (R. 1105). Buis acknowledges that not every finding needs to be evaluated, but argues the ALJ was under a duty to include this particular finding because it indicates disability.

As the Magistrate Judge noted, the ALJ cited to the exact page of evidence that mentioned that Buis was "quite disabled." The court finds that the ALJ thoroughly considered the mental health functional areas in determining that Buis's depression was "frustration based" and did not qualify as severe for disability purposes. As the Magistrate Judge stated:

> The Seventh Circuit explained in *Carlson* that, so long as "the ALJ considered the important evidence" in a manner that enables the reader "to trace the path of the ALJ's reasoning," the ALJ does not err. 999 F.2d at 181. Here, the ALJ has done just that, citing to the very exhibit that Buis contends was not sufficiently addressed and explaining that the same clinical records are sparse and indicate that Buis's depression is frustration based.

(Filing No. 39, at ECF p. 22). Because this evidence was considered by the ALJ, the court adopts the Magistrate Judge's report finding that the ALJ properly considered Dr. Schneider's opinion in finding that Buis's depression was not a severe impairment as defined by the Social Security Act. The court, thus, **ADOPTS** this portion of the Magistrate Judge's report and recommendation.

IV.   **Conclusion**

In conclusion, the court **ADOPTS in part** and **REJECTS in part** the Magistrate Judge's report and recommendation (Filing No. 39). Specifically, the court **ADOPTS** the Magistrate Judge's findings regarding the following three objections: the evaluation of

15

the opinions of Doctors Wenzler and Ruiz, that substantial evidence supported the ALJ's step five finding, and the ALJ's evaluation of the medical opinion of Dr. Schneider.  The court **REJECTS** the Magistrate Judge's findings on the following three objections and orders these issues **REMANDED** to the ALJ for further consideration:  the opinion of Dr. Staley, Listing 14.09B, and the credibility of Buis.

**SO ORDERED** this 11th day of February 2015.

_____
RICHARD L. YOUNG, CHIEF JUDGE
United States District Court
Southern District of Indiana

Distributed Electronically to Registered Counsel of Record.